HEARD NOVEMBER TERM, 1875.

## COUNTY COMMISSIONERS *vs.* WINNSBORO NATIONAL BANK.

The County Commissioners and the School Commissioner cannot maintain an action against one holding as bailee a sum of money belonging to the County treasury to compel him to make distribution of the same among the different departments of the government as if it were assets in equity subject to the jurisdiction and orders of the Court.

The administration of the funds of a public treasury belongs to the executive department of the government, and the judicial department has no jurisdiction to seize such funds and distribute the same under its orders.

County Commissioners have no right to demand and receive of the County Treasurer a sum of money in gross ; their duty is simply to audit legal demands upon the County and certify the same to the County Treasurer for payment. The County Treasurer is the legal custodian of the County funds, and the duty of disbursing the same is on him.

BEFORE MACKEY, J., AT FAIRFIELD, JANUARY TERM, 1875.

This was an action by Henry Jacobs and others as County Commissioners of Fairfield County, and W. J. Crawford as School Commissioner of the same County, plaintiffs, against the Winnsboro National Bank, defendant.

The summons was for the relief demanded in the complaint, and the complaint, after stating in the first and second paragraphs thereof that the plaintiffs were the County Commissioners and the School Commissioner of Fairfield County, and that the defendant is a banking association duly organized, &c., proceeded as follows:

That on the 30th day of March, A. D. 1874, one J. S. Fillebrown took from the safe of the County Treasurer of Fairfield County a package of money, said to contain about eight thousand dollars;

that he has deposited said package with the Winnsboro National Bank, the defendants, and intends to carry the same to the State Treasury.

That the money contained in said package belongs to the County of Fairfield, and has been appropriated for County and school purposes, having been raised by taxation for County purposes.

Wherefore the plaintiffs demand judgment against the defendant; that it be required to hold said money on deposit subject to the further order of this Court, until a legal inquiry and determination of the ownership of said money may be made.

On the 7th May, 1874, an order was made by the Circuit Judge as follows:

"On hearing the complaint herein, and the affidavit filed therewith, no answer or demurrer having been filed, and upon hearing the suggestions of William Nelson, County Treasurer, of William J. Crawford, School Commissioner, and of Henry Jacob, Chairman of the Board of County Commissioners, on motion of Mr. Rion, attorney for the plaintiffs, and by request of Mr. Attorney General Melton, it is ordered that the Attorney General be made a party to these proceedings; and that it be referred to C. C. Macoy, Esquire, as Special Referee, to take testimony and report touching the ownership of the funds referred to in the complaint herein; that he hold said reference without delay at Fairfield Court House, and to make his report to the Judge of this Court, at Chambers."

"I acknowledge service of this order, and waive any amendments of pleading or other formalities for the purpose of making me a party." [Signed by the Attorney General.]

In pursuance of the above order the Referee reported:

"This Referee finds that on the 30th day of March, 1874,—the day on which H. A. Smith, County Treasurer of Fairfield County, was arrested—the funds in question were taken from the safe of said County Treasurer by J. S. Fillebrown, Clerk of the Comptroller General, for safekeeping, and by him were deposited with the Winnsboro National Bank, the defendant; that on the 31st day of March, 1874, the complaint in this action was filed, and the said bank was, by order on that day granted, enjoined from paying out said funds until the further order of this Court. In pursuance of the same

order, the funds were counted by A. M. Mackey, Trial Justice, by the School Commissioner, and by the Chairman of the Board of County Commissioners, and were found to be—

Currency.................................................................$8,526 25
Bills receivable.............................................................  8 00
                                                                      ————————
                                                                      $8,534 25

"These funds having arisen from taxes collected in Fairfield County, their proper place is in the safe of the County Treasurer, as it would have been if Smith had turned them over to his successor, and they must be so considered; for I hold, as matter of law, that the acts of Fillebrown in no way or manner had any effect, either as regards the ownership of these funds or the rights or interests of claimants thereof."

He further reported as a finding of fact that the proportion of said fund due to the State was $298.74, the proportion due the Board of County Commissioners was $1,287.23, and the proportion due the School Commissioner was $6,948.28.

The Attorney General excepted to the report, on the ground that the Referee should have reported the whole fund as due and belonging to the State.

On the 28th January, 1875, the following final order was signed by His Honor the Circuit Judge:

On hearing the report of the Special Referee herein, the exceptions thereto, and the argument of counsel, it is ordered, on motion of Mr. Rion, plaintiffs' attorney:

I. That the exceptions to the Special Referee's report herein be overruled, and that said report be confirmed.

II. That the Winnsboro National Bank, the defendant, do turn over, out of the funds in question, the sum of $298.74, being the amount reported to be due the State of South Carolina, to William M. Nelson, as County Treasurer of Fairfield County.

III. That the said County Treasurer do, out of said sum, first pay the costs and disbursements of this action, and do remit the balance to the State Treasurer of the State of South Carolina, for the use of the State.

IV. That the said Winnsboro National Bank, the defendant, do turn over to the said County Treasurer, of the funds in question, the

sum of $1,287.23, the amount reported to be due to the Board of County Commissioners of Fairfield County, to be held by him subject to the orders of the Board of County Commissioners, to be disbursed by them according to law.

V. That the said Winnsboro National Bank, the defendant, do turn over to the said County Treasurer, of the funds in question, the sum of $6,948.28, the amount reported to be due the School Commissioner of Fairfield County, to be placed by him to the credit of the school fund of Fairfield County, to be drawn out in pursuance of law.

VI. That the said Board of County Commissioners of Fairfield County, and School Commissioner, do each pay to James H. Rion, plaintiffs' attorney, by order on the said County Treasurer, five per centum of the amount reported due them, as aforesaid, as a fee for his services herein, to be paid by the County Treasurer out of the respective funds hereinbefore specified.

The Attorney General appealed on the grounds—

1. Because the said judgment gives relief not asked for in the complaint; and there being no answer or other pleadings raising proper issues, plaintiffs have no right to any relief other than that demanded in the complaint.

2. Because the said plaintiffs have no right or interest in the fund to warrant the judgment pronounced in said action.

3. Because, if any judgment could have been made in said action respecting the ownership of said fund, the judgment of the Court should have been that the State of South Carolina was ,entitled to the tax collected for State purposes, to wit, twelve-fifteenths of said fund, and that the County of Fairfield was entitled to the tax collected for County purposes, to wit, three-fifteenths of said fund; and the same should have been ordered to be paid to the County Treasurer of Fairfield County, to be by him applied according to law.

*Melton,* Attorney General, for appellant.

*Rion,* contra.

March 15, 1876. The opinion of the Court was delivered by

WILLARD, A. J. The leading question in this case is, whether the County Commissioners and Commmissioners of Schools have a right

of action to recover from the County Treasurer specific amounts standing to the credit of their respective offices, to be disbursed in their several departments, by a proceeding in the nature of a bill in equity to seize and administer such funds as legal assets.

Criminal proceedings, for official misconduct, were instituted against the Treasurer of Fairfield County, and an agent of the Comptroller General, for the security of the moneys in the hands of the County Treasurer during such prosecution, took possession of a sum of money in the County treasury and deposited it temporarily with the defendants, a national bank, as a special deposit. The present suit was commenced by the persons holding the offices of County Commissioners and School Commissioner of that County. The complaint alleged as follows : "That on the 30th day of March, A. D. 1874, one J. S. Fillebrown took from the safe of the County Treasurer of Fairfield County a package of money, said to contain about eight thousand dollars; that he has deposited said package with the Winnsboro National Bank, the defendant, and intends to carry the same to the State Treasury; that the money contained in said package belongs to the County of Fairfield, and has been appropriated for County and school purposes, having beeen raised by taxation for County purposes." The prayer was that the defendant be required to hold said money on deposit subject to the further order of this Court, until a legal inquiry and determination of the ownership of said money may be made.

An injunction order was made upon such complaint and an affidavit supporting it. This order contained other provisions than such as properly belonged to an injunction order, that will be noticed hereafter. So far as it operated as an injunction order, it is not a subject of review at the present time, as no motion appears to have been made to dissolve it as such, and as its force, as a preliminary injunction, was expended with the recovery of final judgment. By the terms of the order just mentioned, the Court assumed the control and administration of the fund thus brought *ex parte* to its notice, and gave directions as to its custody by the bank, "subject to the orders of the Court of Common Pleas of Fairfield County, to be made upon a legal inquiry and determination of the ownership of said money by the Court."

This order appears to have been made without notice to any of the parties interested in the fund, and in an action in which the only defendant was a mere bailee of a special deposit, and in which neither

the County nor the State was represented either as a plaintiff or a defendant. This order was dated March 31, 1875.

On the 4th of May following, H. Jacob, Chairman of the Board of County Commissioners for Fairfield County, one of the plaintiffs, filed a suggestion informing the Court "that on the 31st day of March, 1874, and while still County Treasurer, Henry A. Smith reported to him that there was in the Winnsboro National Bank the sum of $1,304.40 appropriated to County purposes." On the same day, W. J. Crawford, School Commissioner of that County, filed a suggestion as follows: "That on the 31st day of March, A. D. 1874, and while still County Treasurer, Henry A. Smith reported to him that there was in the Winnsboro National Bank the sum of $6,366.95 appropriated for school purposes."

The reasons for the filing of these suggestions on the part of parties to the action, and the bearing of the matters suggested, are not explained, nor can we understand them from the course of practice with which we are familiar.

On the same day with the last named, W. M. Nelson filed a suggestion alleging that since the commencement of the action Henry Smith had resigned as County Treasurer, and that he had been appointed and commissioned such County Treasurer.

No order making Nelson a party defendant appears, nor does it appear that he followed up the filing of his suggestion with any motion to be made a party to the record.

On the 5th day of May an order was made by the Circuit Judge as follows: "On hearing the complaint herein, and the affidavit filed therewith, no answer or demurrer having been filed, and upon hearing the suggestions of William Nelson, County Treasurer, of William J. Crawford, School Commissioner, and Henry Jacob, Chairman of the Board of County Commissioners, on motion of Mr. Rion, attorney for the plaintiffs, and by request of Mr. Attorney General Melton, it is ordered that the Attorney General be made a party to these proceedings, and that it be referred to C. C. Macoy, Esq., a Special Referee, to take testimony and report touching the ownership of the funds referred to in the complaint herein; that he hold said reference without delay at Fairfield Court House, and do make his report to the Judge of this Court at Chambers."

It appears from this order that no answer was interposed in behalf of the County Treasurer; that the reference to ascertain the ownership of the fund was requested by the Attorney General, and

that the Attorney General was made a party.   The formal entry of an order making him a party, and the amendment of the pleadings to that effect, was waived by the Attorney General, and no answer appears to have been interposed by him.

Thereupon the Referee proceeded to take testimony, and reported certain sums due out of the funds in the County treasury to the State, to the County Commissioners and to the School Commissioner, and recommended that the fund in suit be ratably distributed among such parties.

The only party that filed exceptions to the Referee's report was the Attorney General in behalf of the State.   A final judgment was given distributing the fund accordingly, from which the Attorney General has appealed.

The question as to the correctness of the judgment is embarrassed by the unusual and irregular course of proceeding.   The attempt to seize a sum of money belonging to a public treasury temporarily separated from such treasury, and to convert it into a fund in equity, subject to distribution, as assets for the payment to the various departments of the government,—the sums which by law they should receive from the treasury,—is a proceeding without precedent and incomprehensible to the judicial mind.   But the difficulty in the present case arises from the fact that the County Treasurer, the legal custodian of the fund, and whose duty it was to see that proper steps were taken to prevent the funds in the treasury from being improperly disposed of, either through the forms of law, or contrary to them, has not answered or interposed a claim to the fund in such form as to bring the question of the ownership of the fund before us.   We are left to conjecture to find the explanation of this circumstance.   It is possible that the County Treasurer thought that his whole duty was discharged when he gave the Court the information that he had been appointed County Treasurer in the place of the officer from whose hands the money had been taken. If so, he was clearly mistaken.   The responsibility for the custody of the funds of the County did not belong to the Circuit Judge, but belonged by law to the County Treasurer.   The custody and disbursement of this fund was an administrative duty that could not be devolved upon a judicial officer.   The Judge can perform judicial functions alone, and only act as he is moved by the parties in interest.   The County Treasurer, as the legal custodian of the funds, was bound to see that the claims of the County Treasurer to

hold and administer the funds were properly represented before the Court. This function could not be performed by the Circuit Judge, for it is the business of an advocate, which is inconsistent with the functions of a Judge. On the accession of the new County Treasurer to his office, he became, in law, chargeable with the fund in question, to the same extent as if it had been placed in his hands by the outgoing County Treasurer.

It does not follow that if the fund is distributed contrary to law, even through the forms of a suit, that the County Treasurer is absolved from liability. If third parties are permitted by a public officer to litigate as among themselves, and take judgments affecting public property or funds in the hands of such officer, although such officer may suffer himself to become bound by such proceedings as between the parties thereto, still he may be held accountable for not interposing, as the representative of the public interests in his hands, to protect such public interests. The County Treasurer should have been made a party to the complaint, as representing the County treasury, and should have answered the complaint, so that the rights of the County treasury to the fund could have been directly passed upon. It happens, however, that the result can be indirectly reached through a defect in the rights of the plaintiff to maintain this action.

The appeal of the Attorney General puts in question the right of the County Commissioners and the School Commissioner to receive the amount which by law was subject to disbursement through their respective departments. Assuming, for the purpose of illustration, that there were funds in the hands of the County Treasurer which by law he should transfer to the plaintiffs for disbursment, then the proper remedy to enable the plaintiffs to obtain such funds was a writ of *mandamus* to compel the County Treasurer. The fund in question must be considered precisely as if it was in the personal custody of the County Treasurer; and unless the money in the County treasury could be seized and converted by the Court into an equitable fund for distribution among those having legal or equitable claims to it, such a remedy could not be pursued in the present case.

It is clear that removing the money to the defendant's custody did not change the legal title of the County Treasurer to it. That act was not so intended. On the contrary, we must assume it was to secure the money so that it might be returned to the County Treasurer in case he was restored to the exercise of his official powers, or

to his successor in office. Such a change of title could not result by operation of law, for the legal intendments are with the best legal right.

The question is simply, then, whether the plaintiffs could bring such an action and have the funds in the treasury seized by the Court for distribution, An action at law could not be maintained by the plaintiffs on the title they set forth to recover moneys belonging to the County Treasury, considered as property wrongfully withheld from the rightful owners. Something is said about appropriation by the County treasurer of those funds, but there is no evidence that any portion of the funds in the treasury had been set apart, as specifically intended, for either the County Commissioners or the School Commissioner, or that anything equivalent to delivery of possession had taken place. The whole fund was an unit, and the County Treasurer could alone divide it into its parts, unless a Court of equity possessed authority to take the fund into its own hands and to make the division requisite. Although the authority to divide the fund rested with the County Treasurer alone, yet parties having a statute right to the fund were not without remedies, for the Courts of law could, by *mandamus*, compel the performance of such act. This jurisdiction by *mandamus* acts upon the person holding the office and neglecting the performance of a legal duty, and not upon the property committed to his care. The remedy is strictly personal, and the penalties for refusal to obey the writ are purely personal, falling on the incumbent as an individual.

Can a Court of equity seize and administer funds in a public treasury ? It certainly never has been done, and that affords strong, though perhaps not conclusive, reason that it ought not to be done. There are reasons why it should not be done. Our Constitution adopts a rule to a greater or less extent governing all communities organized upon a partition of public authority among different and co-ordinate departments of the government. It separates executive duties from judicial. It classes among the executive duties those embracing the administration of public property and funds. The judiciary cannot draw to itself the actual administration of public property and funds without overstepping the bounds that the Constitution has set to it. While the Courts can act upon the person holding an office in such manner as to compel him to perform his official duties, they cannot push him aside and take the public property and funds in their own hands and administer them.

These principles are of universal recognition. The judicial powers and responsibilities should be more carefully watched and preserved than those of any other department of the government, for judicial power represents the strength of the government. This, although a passive quality and a function less brilliant than that of directing the active public energies, constitutes the essential condition of public security and progress, and renders possible the accomplishment of beneficent ends and the defeat of evil purposes. Encroachments of judicial authority upon the domain of other co-ordinate branches of the government are the more dangerous, because tending to convert a conservative into a destructive power.

We do not feel at liberty to assert for the judicial authority powers so objectionable and unprecedented as those claimed to be exercised in their behalf by the plaintiffs.

The law regulating the powers of the County Commissioners (General Statutes, 146,) nowhere authorizes the County Commissioners to demand and receive from the County Treasurer, in a gross sum, the amounts to be disbursed by them. On the contrary, the County Treasurer is the disbursing officer, entitled to hold the unexpended funds of the County, and the proper duty of the County Commissioners is to audit legal demands against the County, and to certify them for payment to the County Treasurer. Payment of demands thus audited and certified is to be made by the County Treasurer directly to the parties entitled to such payments, and he is not permitted to pay moneys to the County Commissioners to be disbursed by them. This defeats the right of the County Commissioners to maintain such an action as they have brought in the present case.

If the School Commissioner has any right whatever to demand in gross moneys held by the County Treasurer applicable to disbursement for school purposes, (a right that need not be considered here,) yet it does not appear that any of the requirements of law, as it regards the character of the vouchers upon which payments are to be made from the County treasury for school purposes, have been complied with. The School Commissioner has no right to maintain an action.

The judgment must be set aside, and an order made relinquishing the fund in question and dismissing the complaint without costs; for this purpose, it is remanded to the Circuit Court.

*Moses,* C. J., and *Wright,* A. J., concurred.